UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM RAY MCNEAL, JR.,

                Petitioner,

-vs-                                 Case No.  8:04-cv-505-T-17EAJ

JAMES V. CROSBY, JR.,

                Respondent.
_____/

## ORDER

This cause is before the Court on Petitioner William Ray McNeal, Jr.'s 28 U.S.C. § 2254 petition for writ of habeas corpus.  He is proceeding on his second amended petition (Doc. No. 10) (hereinafter "Petition").  McNeal challenges his conviction and sentence entered by the Circuit Court for the Sixth Judicial Circuit, Pinellas County, Florida, in state circuit case number CRC00-02982CFANO.

BACKGROUND AND PROCEDURAL HISTORY

McNeal was originally charged by information with the offense of Attempted Murder in the Second Degree, a first degree felony, upon victim James Lewis. (V1: R 8).[1] On December 15, 2000, the State Attorney filed an amended information, charging Attempted Murder in the First Degree, and adding that the offense was committed "with a deadly weapon, to-wit: a knife..." (V1:  R 20). The case proceeded to a jury trial before the

_____

[1] Respondent filed the four-volume record on direct appeal in Case 2D98-4961as Respondent's Exhibit 13.  The record consists of one original volume, two addendum volumes, and one supplemental volume, which Respondent has designated as volumes one to four. Volume One is referred to as "V1: R__", and contains the Information, Judgment and Sentence, and other documents. Volume Two is referred to as "V2: T__," and contains the trial transcript. Volume Three contains only a printout of the Case Progress Docket, and Volume Four contains the jury voir dire, opening statements, and sentencing documents.

Honorable Brandt C. Downy, III, Circuit Judge. McNeal was represented by court-appointed counsel, James Martin, Esquire. The jury returned a verdict of guilty of attempted murder in the second degree, with a weapon. (V1: R 67; V2: T 167). On April 25, 2001, the court adjudicated McNeal guilty and sentenced him to a mandatory thirty-year prison term as a prison releasee reoffender. (V1: R 72-76; V2: T 178).

McNeal pursued an appeal of his convictions and sentences. McNeal's appellate attorney, Assistant Public Defender Howardene Garrett, filed an Anders[2] brief stating that she could find no meritorious argument to support the contention that the trial court committed significant reversible error in this case. (Exhibit 1). Counsel directed the appellate court's attention to two potential issues for review: (1) Did the trial court err in denying the motion for judgment of acquittal? (2) Did the trial court err in sentencing Appellant? McNeal was invited by the state appellate court to file a pro se brief, but he did not do so. (Exhibit 2). Later, the State filed an Anders answer brief of appellee. (Exhibit 3). On January 17, 2003, in Case No. 2D01- 2013, the Second District Court of Appeal of Florida filed an unwritten per curiam opinion affirming McNeal's conviction and sentence. (Exhibit 4). McNeal v. State, 843 So.2d 271 (Fla. 2d DCA 2003)[Table]. The court filed its mandate on February 10, 2003. (Exhibit 5).

On August 22, 2002, McNeal filed a Motion for Postconviction Relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. (Exhibit 6). On March 12, 2003, the state trial court issued a written order summarily denying relief. (Exhibit 7). After setting out the standard for reviewing ineffective assistance of counsel claims under Strickland v.

---

[2] Anders v. California, 386 U.S. 738 (1967).

Washington, 466 U.S. 668 (1984), the court set out the following findings of fact and conclusions of law in its order:

> The Defendant argues that he was provided ineffective assistance of counsel by his counsel's failure to investigate evidence and witnesses and in turn, counsel's failure to move for a continuance to conduct these depositions. The Defendant bases this argument on his presumption that his appointed attorney could not have adequately prepared for his trial as he had only been on his case on April 11, 2001, and had not deposed any of the witnesses that his previous counsel had deposed. This claim is without merit. The depositions of the witnesses had been transcribed and were available in the record having been filed before the Defendant's new attorney was appointed. [Exhibit 1, cover pages of eleven transcribed depositions]. The Defendant has not argued that any of the depositions taken by his prior attorney were inadequate or described additional investigation should have been done. Consequently, the Defendant has neither shown any deficient performance nor prejudice to his trial required under Strickland for an ineffective assistance of counsel claim. See also, Tyler v. State, 793 So.2d 137 (Fla. 2d DCA 2001)(claim of ineffective assistance of counsel for failure to investigate witnesses must include a description of the prejudice suffered due to the omission of the witness's testimony at trial). Moreover, the Defendant makes this argument after recounting how he had told the Court that he was ready for trial the day before, April 24, 2001, when the State requested a continuance of one day because the victim and other State's witnesses had not shown for trial. The Defendant cannot credibly assert that his counsel was not ready or needed a continuance when the Defendant had joined his counsel in personally arguing to the Court that he was ready for trial.

> The Defendant also claims ineffective assistance of counsel by his attorney's failure to move to suppress his confession and call witnesses for a suppression hearing. The Defendant has not alleged that he made circumstances tainting the admissibility of the confession known to his counsel and he does not elaborate any further about what witnesses should have been called. This claim is denied. See Ragsdale v. State, 720 So.2d 85 (Fla. 2d DCA 1989)(a facially sufficient claim was made when the defendant had alleged he advised his attorney of bases for suppressing his confession and attorney did not move to suppress the confession).

> The Defendant also asserts that his counsel was ineffective for failing to call Julius Gordon as a witness to testify that the victim threatened the Defendant and later ran after him and that at one point the Defendant dared the victim to hit him "with the bricks that he was throwing at [] him]." After

-3-

reviewing Julius Gordon's transcript, the Court finds that it was not deficient performance and there is not a reasonable probability that the outcome of the proceeding would have been different had Gordon testified on the Defendant's behalf. In addition to the testimony that the Defendant asserts Gordon would provide, during deposition Gordon also stated the following: that the Defendant, telling the victim "let's box"; that after ending the 'boxing' or fighting, the Defendant "sucker punched" the victim; that the Defendant chased after the victim; that the Defendant returned to the Defendant's ex-girlfriend's apartment without the victim, kicked in the door to her apartment, and then came back out carrying a knife in each hand; that he, Gordon, did not think that the victim's threat was said in seriousness; and that the Defendant chased the victim for 100 feet or more while the victim was telling the Defendant to leave him alone. [Exhibit 2, excerpt of transcript of Julius Gordon, at 13-24]. Given this additional expected testimony, it was likely in the Defendant's best interests that Mr. Gordon was not a witness.

The Defendant argues that his counsel was ineffective for not calling Venisha Lynn as a witness to testify that he stuck his knife in the victim by throwing it at him from about a foot away rather than by stabbing him. The Defendant does not show any reasonable probability that the outcome of the proceeding would have been different with this testimony. He has therefore not shown any prejudice to his trial. This claim of error is denied.

Without explanation, the Defendant makes the bare claim that his counsel was ineffective for not presenting the testimony of Valerie Williams. Without any explanation of how this was deficient performance by counsel or how it prejudiced his trial, the Defendant has shown neither part of the Strickland test. This claim is denied. Tyler v. State, 793 So.2d 137, 144 (Fla. 2d DCA 2001)(a facially sufficient claim of ineffective assistance of counsel was not made because the defendant did not provide the substance of witness's testimony that would have benefitted the defense).

Similarly, the Defendant's claim of ineffectiveness by not using the testimony of his confidential expert about the Defendant's bi-polar disorder to rebut and mitigate the State's evidence is denied. The Defendant claims that the expert's testimony would have rebutted the State's evidence; however, the Defendant does not state what evidence could have been rebutted. Additionally, the jury and the Court were aware of the Defendant's disorder by the State's cross-examination of the Defendant. [Exhibit 3, excerpt of April 25, 2001, jury trial at 91].

The Defendant also claims that his counsel was ineffective for failing to properly cross-examine various witnesses. In the first of these claims, the Defendant states that the medical examiner should have been impeached by

his deposition about the extent of injury to the victim. The Court disagrees. Since the Defendant states the medical examiner's testimony was the same at trial and deposition there was no inconsistent testimony to impeach. Next the Defendant asserts his counsel failed to impeach a witness Arnold Jack Mitchell because he told his counsel during trial that the witness "was biased against me that we don't like each other and I had to confront Mitchell once for something that he did ... and that Mitchell was in his apartment getting high on crack cocaine ..." The Defendant's counsel did cross-examine this witness concerning his bias towards the Defendant and his whereabouts during the incident; the witnesses answered. [Exhibit 3, 15-16]. The Defendant does make allegations about this witness lying; however, the Defendant does not point to any conflicting testimony from Mitchell's deposition and does not otherwise tell how the witness should have been impeached. Therefore, the Court finds that the Defendant has not shown deficient performance by his counsel's examination of Mitchell.

The Defendant also claims that his counsel should have retained an expert on drug use to cast doubt on the credibility of the State's witnesses who had drug problems. This claim is conclusory and insufficient to allow the trial court to examine the specific allegations against the record. Ragsdale, <u>supra</u>. Additionally, as the Defendant points out, the one witness that he specifies in regard to this claim, the victim, admitted in court that had drug problems and difficulty remembering the specifics of when the Defendant stabbed him. The Defendant does not point to how the victim or any other witness testified erroneously or otherwise that an expert on drug use would have been able turn into [sic] support for his defense. Accordingly, the Defendant has not shown a reasonable probability that the outcome of the proceeding would have been different absent the alleged deficient performance. This claim is denied.

The Defendant makes a bare claim of ineffective assistance by his counsel's failure to order a pre-sentence investigation. The Defendant does not demonstrate how this was deficient performance by his attorney or how this prejudiced his sentencing to a mandatory prison releasee reoffender sentence. The claim is denied.

The Defendant claims that his counsel erred when, without the Defendant's permission, counsel conceded to his guilt to the lesser-included offense of attempted manslaughter. The record refutes this. The Defendant stated to the Court that he had given his permission to argue in closing for a lesser-included offense. [Exhibit 3, 118-119, 140]. This claim is denied.

**Withholding Evidence**

The Defendant claims that the prosecution failed to disclose favorable evidence. The Court finds this claim is not substantiated. In <u>Brady v. Maryland</u>, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215 (1963). To establish a Brady violation, the Defendant must prove the following: (1) the Government possessed evidence favorable to the defendant; (2) the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. <u>Hegwood v. State</u>, 575 So.2d 170, 175 (Fla. 1991); <u>State v. Parker</u>, 721 So.2d 1147, 1149 (Fla. 1988).

The Defendant claims to have known of the undisclosed evidence before trial and therefore appears to have confused 'failure to disclose evidence' with apparent trial strategy or the presentation of only relevant evidence. The evidence that the Defendant claims was withheld by the prosecution was: that the victim and one other of the State's witnesses had criminal histories and pending felony charges at the time of the trial; and various facts from the testimony of three deposed witnesses. The Defendant claims he was already aware of the victim's troubles with the law when his attorney visited him on April 24, 2001; according to the Defendant's motion, he even advised his attorney that it was not likely that the victim would be showing for trial "with the pending charges against him." Regarding the other witness with a criminal record, the Defendant states in his motion that he was aware of the record because his previous attorney "already supplied me with [][the witness's] whole rap sheet with numerous possession charges and a battery on a law enforcement officer." The Defendant also claims that State withheld evidence when it did not bring out all of the facts that certain witnesses had stated in their depositions that were favorable to his defense. Because the Defendant was already aware - through their depositions - of the statements he claims that the State did not disclose, the Court finds no Brady violation. This claim is denied.

(Exhibit 7--Order Denying Defendant's Motion for Post-Conviction Relief at pp. 2-6.)

McNeal filed a motion for rehearing on April 7, 2003. (Exhibit 8). The state trial court

denied the motion in an order filed April 21, 2003. (Exhibit 9). McNeal appealed the adverse

orders. He filed a pro se initial brief in June 2003. (Exhibit 10). In accordance with Florida's rules of appellate procedure in summary postconviction appeals, the State did not file an answer brief. On December 19, 2003, in Case No. 2D03-2218, the state appellate court per curiam opinion affirming the denial of postconviction relief. (Exhibit 11). McNeal v. State, 865 So.2d 497 (Fla. 2d DCA 2003)[Table]. The mandate was filed on January 28, 2004. (Exhibit 12).

McNeal then timely filed a federal petition for writ of habeas corpus.  The original federal petition was signed by McNeal on March 14, 2004, and timely filed in this Court on March 17, 2004. (Doc. No. 1). Pursuant to this Court's order, McNeal filed an amended petition on May 7, 2004. He then filed his second amended petition on June 9, 2004. (Doc. No. 10). The second amended petition contains two grounds for relief: (1) ineffective assistance of trial counsel for counsel's failure to investigate the defendant's case, failure to call witnesses on the defendant's behalf when a witness list was provided and the witnesses were available, and failure to properly impeach the victim and the State's witness on pending criminal charges at the time of trial, when the defendant informed counsel of the pending charges; (2) conviction obtained by the State Attorney who committed a Brady violation as evidenced by the State's failure to disclose to the defense that the victim and a State witness had pending charges at the time of the defendant's trial.

STANDARDS OF REVIEW

Because McNeal filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d

880, 889-90 (11th Cir. 2003); <u>Maharaj v. Sec'y of Dept. of Corrections</u>, 304 F.3d 1345, 1346 (11th Cir. 2002).  The AEDPA "establishes a more deferential standard of review of state habeas judgments," <u>Fugate v. Head</u>, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002); <u>see</u>, <u>Bell v. Cone</u>, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]).   AEDPA is relevant to a review of this Petition.

### A.

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); <u>Price v. Vincent</u>, 123 S.Ct. 1848, 1852-53 (2003); <u>Clark v. Crosby</u>, 335 F.3d 1303, 1308 (11th Cir. 2003); <u>Harrell v. Butterworth</u>, 251 F.3d 926, 930 (11th Cir. 2001).   "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. <u>Lockyer v. Andrade</u>, 538 U.S.63, 71-72 (2003).  Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that  the state court's conclusion is contrary to clearly established governing federal law.  <u>Mitchell v. Esparza</u>, 124 S.Ct. 7, 10

(2003); <u>Clark v. Crosby</u>, 335 F.3d at 1308-10; <u>Washington v. Crosby</u>, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. <u>Mitchell v. Esparza</u>, 124 S.Ct. at 10 (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)). <u>See</u> <u>also</u> <u>Price v. Vincent</u>, 123 S.Ct. at 1853; <u>Lockyer v. Andrade</u>, 538 U.S. at 75-77. A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. <u>Early v. Parker</u>, 537 U.S. 3, 8 (2002); <u>Mitchell v. Esparza</u>, 124 S.Ct. at 10; <u>Parker v. Secy of Dept. of Corrections</u>, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply. <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000). The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. <u>Lockyer v. Andrade</u>, 538 U.S. at 75-77; <u>Williams</u>, 529 U.S. at 409-10; <u>Penry v. Johnson</u>, 532 U.S. at 791-792; <u>Woodford</u>

v. Visciotti 537 U.S. 19, 25 (2002); Mitchell v. Esparza, 124 S.Ct. at 11-12; Price v. Vincent, 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Holland v. Jackson, 124 S.Ct. 2736, 2737-2738 (2004) (citing Yarborough v. Gentry, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); Miller-El  v. Cockrell, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. at 697, n. 4  (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

**B**.

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Henderson, 353 F.3d at 890-91.  The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

**C.**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); <u>Snowden v. Singletary</u>, 135 F.3d 732, 735 (11th Cir. 1998). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999).[3] <u>See</u> <u>also</u>, <u>Henderson v. Campbell</u>, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)); <u>Snowden v. Singletary</u>, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting <u>Duncan v. Henry</u>,  513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review.  "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last

---

[3] <u>O'Sullivan v. Boerckel</u>, 526 U.S. at  845, suggests a shift by the United States Supreme Court with regard to the terminology used in discussing exhaustion principles.  The majority of the [<u>O'Sullivan</u>] Court concluded that an issue that was not properly presented to the state court, and which can no longer be litigated under state procedural rules, did not satisfy the exhaustion requirement, and is procedurally barred from federal review. 526 U.S. at 839-840, 848. As noted by the dissenting opinion, prior case law characterized issues for which no vehicle existed for state court litigation to be exhausted but procedurally barred. 526 U.S. at 850, 852; see <u>Coleman v. Thompson</u>, 501 U.S. 722, 732 (1991); <u>Engle v. Isaac</u>, 456 U.S. 107 (1982); <u>Picard v. Connor</u>, 404 U.S. 270 (1971).

There are no unexhausted claims in McNeal's petition that can still be litigated in state court. If a claim is procedurally barred, federal review is precluded by virtue of that bar, and the exhaustion, or lack of exhaustion, is irrelevant. <u>O'Sullivan</u>, 526 U.S. at 848.

resort, even if review in that court is discretionary." Pruitt v. Jones, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing O'Sullivan, 526 U.S. at 845).  This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad significance. O'Sullivan, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001).  Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." Smith v. Jones, 256 F.3d at 1138.  "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." Henderson v. Campbell, 353 F.3d at 891(quoting Judd v. Haley, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances.  First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. Henderson v. Campbell, 353 F.3d at 892; Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995).  To show "'prejudice," McNeal must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."   Hollis v.

Davis, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152, 170 (1982). McNeal must show that there is at least a reasonable probability that the result of the proceeding would have been different.  Henderson v. Campbell, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Henderson v. Campbell, 353 F.3d at 892.  This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent."  Henderson v. Campbell, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (2001) (citing Calderon v. Thompson, 523 U.S. 538, 559 (1998); Murray v. Carrier, 477 U.S. 478,  495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent").  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon, 523 U.S. at 559 (quoting Schlup, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The Schlup Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. Schlup 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." Ward v. Cain, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

"[t]he Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not itself excepted from the doctrine of procedural default." Henderson v. Campbell, 353 F.3d at 896. In Edwards v. Carpenter, 529 U.S. 446, 451- 52 (2000), a habeas petitioner argued ineffective assistance of counsel as cause for his procedural default of other constitutional claims in his § 2254 petition. But, he had never raised this ineffective assistance claim in state court, and he was now procedurally barred from raising the claim. The Supreme Court held that unless the petitioner could establish cause and prejudice to excuse his procedural default of his ineffective assistance claim, he was barred from using it as a basis for cause to excuse his procedural default of the underlying claim. Id. at 451-53.

<u>No Presumption that State Court Ignored Its Procedural Rules</u>

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal. Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. See Coleman, 501 U.S. 722, 735-36 (1991); Kight v.

-14-

Singletary, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); Tower v. Phillips, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

### D.

### Ineffective Assistance of Counsel Claims

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: 1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and 2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 687-88; see also, Wiggins v. Smith, 123 S.Ct. 2527 (2003); Williams v. Taylor, 529 U.S. 362 (2000).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).  This judicial scrutiny is "highly deferential." Id. at 477.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90; Bell v. Cone, 535 U.S. 685, 698 (2002).  Because the ultimate resolution of the ineffective assistance of counsel claims are mixed questions of law and fact, Thompson v. Haley, 255 F.3d 1292, 1297 (11th Cir. 2001); Meeks v. Moore, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness contained in § 2254(e)(1) does not apply to this determination.  Parker v. Head, 244 F.3d

at 835-837.   "[T]he Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims." Williams, 529 U.S. at 391.

"To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled. ' " Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting Burger v. Kemp, 483 U.S. 776 (1987)). "Therefore, the cases in which habeas petitioners can properly prevail an the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir.), cert. denied, 513 U.S. 899 (1994).

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take. See Chandler, 218 F.3d at 1315. An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment. Chandler, 218 F.3d, at 1314 n. 15.

**E.**

Generally, claims alleging a violation of state law are not subject to review in federal habeas proceedings. Pulley v. Harris, 465 U.S. 37, 41 (1984); McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir.1992). To the extent that a federal question is raised in the federal habeas petition, the federal question was not exhausted in state court if the issue

were raised only as a state law claim in state court. <u>Anderson v. Harless</u>, 459 U.S. 4, 6-8 (1982).

Finally, in the event constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993). The test is "less onerous" then the harmless error standard enunciated in <u>Chapman v. California</u>, 386 U.S. 18 (1967). "The test is whether the error had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" <u>Brecht</u>, 507 U.S. at 637. Although no constitutional error has occurred in McNeal's case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

## DISCUSSION

A review of the record demonstrates that, for the following reasons,  McNeal is not entitled to relief from this Court on either ground because he fails to meet the threshold requirements of 28 U.S.C. 2254(d) and (e).  Therefore McNeal's petition will be **DENIED.**

### Ground One

McNeal raises several allegations of ineffective assistance of trial counsel. In order to show a violation of the Sixth Amendment right to counsel, McNeal must satisfy the two-pronged inquiry of <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); First, McNeal must demonstrate that the attorney's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, McNeal must prove prejudice, in that he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. McNeal must prove both prongs of Strickland. Therefore, if McNeal fails to establish either deficient performance or prejudice, the court need not address the other prong. Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,...that course should be followed."); Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998). McNeal fails to establish either prong of Strickland.

McNeal alleges that his trial counsel was ineffective for failing to investigate McNeal's case, failing to call witnesses on McNeal's behalf when a witness list was provided and the witnesses were available, and failing to properly impeach the victim and the State's witness on pending criminal charges at the time of trial, when McNeal informed counsel of the pending charges.

As to the first allegation, McNeal specifically claimed in his Rule 3.850 motion that counsel should have investigated evidence and witnesses and moved for a continuance to conduct depositions. McNeal based his argument on his presumption that his appointed attorney could not have adequately prepared for his trial as he had only been on his case on April 11, 2001, and had not deposed any of the witnesses that his previous counsel had

deposed. The state postconviction court properly denied this claim inasmuch as the record shows that the depositions of the witnesses had been transcribed and were available in the record prior to Mr. Martin's appointment as substituted counsel. (See Court's Exhibit 1 attached to the order denying postconviction relief). Moreover, McNeal has not argued that any of the depositions taken by his prior attorney were inadequate nor has McNeal described additional investigation that should have been done. Consequently, McNeal failed to show deficient performance on counsel's part nor prejudice. The state trial court also pointed out that McNeal had told the trial judge the day before trial that he was ready for trial.

In his second allegation, McNeal faults counsel for failing to call witnesses Julius Gordon, Venisha Lynn, and Valerie Williams as defense witnesses. The state court, after reviewing the deposition of Julius Gordon, concluded that Mr. Gordon possessed damaging evidence against McNeal and therefore would not have been helpful to McNeal's defense. For instance, Mr. Gordon stated that McNeal told the victim "let's box," and that after ending the boxing or fighting, McNeal "sucker punched" the victim. Mr. Gordon also said that McNeal chased after the victim and that McNeal returned to his ex-girlfriend's apartment without the victim, kicked in the door to her apartment, and then came back out carrying a knife in each hand. Furthermore, Mr. Gordon stated in his deposition that he did not think that the victim's threat was said in seriousness, and that McNeal chased the victim for 100 feet or more while the victim was telling the Defendant to leave him alone. (See deposition of Julius Gordon attached to the order denying postconviction relief as Court's Exhibit 2,

at pp. 13-24). The state court's determination that McNeal failed to establish any prejudice was reasonable under these circumstances.

In his postconviction motion, McNeal also argued that his counsel was ineffective for not calling Venisha Lynn as a witness to testify that McNeal stuck his knife in the victim by throwing it at him from about a foot away rather than by stabbing him. McNeal failed to show, however, that there is any reasonable probability that the outcome of the proceeding would have been different with this testimony. As to alleged witness Valerie Williams, McNeal failed to allege any facts in his postconviction motion to show how the absence of Ms. Williams' testimony resulted in prejudice to McNeal.

In his final allegation of ineffectiveness, McNeal complains his counsel should have properly impeached the victim and the State's witness on pending criminal charges at the time of trial, when McNeal informed counsel of the pending charges. First, McNeal did not set out specific factual allegations in the instant federal petition in support of this claim, and it does not appear that this particular claim was sufficiently raised and preserved in the state court in the postconviction proceeding and is therefore procedurally barred. To the extent that McNeal may have exhausted this claim, however, McNeal has not demonstrated deficient performance or prejudice in this instance. The record reflects that James Lewis, the victim, did testify about his current drug problems, and also admitted that he has twelve prior felony convictions. (V2: T 58, 59-60).

In summary, as to the ineffective assistance of counsel claims, the ruling of the state court in this case did not result in a decision that was contrary to, or involved an unreasonable application of, United States Supreme Court law, nor resulted in a decision

that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Moreover, McNeal has not presented clear and convincing evidence to rebut the presumption of correctness of the trial court's factual findings. Thus, McNeal is not entitled to federal habeas corpus relief on ground one.

Ground Two

McNeal asserts the State Attorney violated McNeal's constitutional rights by withholding evidence that the victim, James Lewis, and one other State witness had pending charges against them at the time of trial. The prosecution must disclose evidence favorable to the accused if the evidence is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83 (1963). The United States Supreme Court has determined that "[i]mpeachment evidence, [ ] as well as exculpatory evidence, falls within the Brady rule." United States v. Bagley, 473 U.S. 667, 676 (1985). In order to establish a Brady violation, a defendant must prove: (1) that the state possessed evidence favorable to the defendant; (2) that he did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

In this case, McNeal failed to advance beyond step 2 above because the state trial court held, as a matter of fact, that McNeal was personally aware of the impeachment evidence against the State's witnesses prior to trial. The court stated in the order denying relief that McNeal claimed in his postconviction motion that he was already aware of the victim's troubles with the law when his attorney visited him on April 24, 2001. McNeal said

he even advised his attorney that it was not likely that the victim would be "showing" for trial "with the pending charges against him." Regarding the other witness with a criminal record, McNeal stated in his motion that he was aware of the record because his previous attorney had supplied McNeal with the witness's rap sheet with numerous possession charges and a battery on a law enforcement officer. (See the first page (unnumbered) of the factual basis under Ground Two of the Motion for Postconviction Relief). Because McNeal was actually aware of the pending the prior charges against the State's witnesses, the state court reasonably found that no Brady violation occurred.

McNeal is not entitled to federal habeas corpus relief on ground two.

Accordingly, the Court orders:

That McNeal's petition for writ of habeas corpus is denied, with prejudice.  The Clerk is directed to enter judgment against McNeal and to close this case.

ORDERED at Tampa, Florida, on February 9, 2006.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record

William Ray McNeal, Jr.